May it please the Court, my name is James Harrison and I represent Appellant John Gilmore. I reserve five minutes of my time for rebuttal. Yes, just keep an eye on the clock. To the clock, Your Honor. One of the greatest dangers we face in the world in terrorism comes from what we do to ourselves in the name of security. And the judiciary must sometimes protect us from our own well-intentioned but misguided behavior. Let me cut to the heart of this case, Your Honor. No matter how you define it or qualify it, the ID requirement is part of the airport's screening process. Airport searches are necessary. Before we get to the heart of this, there's a preliminary matter, at least as far as I'm concerned, which is jurisdiction. Yes, Your Honor. Let's talk about jurisdiction for just a moment. Sure. TSA says that the only court that can hear this case is the appellate court for reasons of 46110 and the like. The real question is, can this court exercise exclusive jurisdiction without a record? And the answer is no. As Judge Nelson said, this is not a trial court. As Judge Trott just said, we're not here to redo something. You don't have a record to review in this case. There is nothing for you to look at. There is no problem at all. The government offered to file in the district court under seal whatever might exist out there for the district court to look at. No, Your Honor. The government did not offer to file in the district court. I stand corrected. They offered to do it with us. Yes. They do offer to do it with you, and they should have done it in the district court, and there was no reason to do it in the district court. You're here to review this 12b-6. You're limited to what was available to the lower court, correct, on your review. Well, under 12b-6, you can take a look at what's alleged in the complaint and what's referred to in the complaint. Correct. And you're asking me if they can file with this court documents. They wanted to file pleadings under seal and which I presume would lead to some secret proceedings and some I don't know what. The issue is that, you know, they have to have shown this in the district court or they can't bring it up here. Do you want us to remand so that can happen? Yes, I certainly want this to remand. I want this to remand for several reasons. This needs to be remanded because it involves broad constitutional challenges. This court is not designed to hear evidence. You're not here to listen to testimony or weigh evidence or finders of fact. You're here to review. Well, it's a jurisdictional question. That's the only thing I'm concerned about. It is a jurisdictional question. And the question is, can this court exercise its exclusive jurisdiction without a record? And the answer is no. In Southern California, Errol advertised this case had been filed here. Let's say it should have been filed here to begin with. We would look at what was filed to see if we had jurisdiction, wouldn't we? That is correct, Your Honor. So why can't we do it now? If it wasn't filed in the district court and the district court should not have had the case. Right. Then why can't we look at what would have been presented to us originally, avoid all this jockeying back and forth, and say we indeed have jurisdiction based on these sealed documents? If this court wants to take a look at the proceedings and sous-fante or otherwise say under 46110 we have jurisdiction over this, be my guest. Please go right ahead. The way it's usually articulated is we have jurisdiction to determine our jurisdiction. If you determine that, Your Honor, I ask that we be able to amend our complaint. We were not able to amend our complaint in the district court because she found there was no jurisdiction. If that's the case, if the case is that it belongs here, we ask to amend. But I don't think it belongs here, Your Honor, because it involves a broad constitutional challenge to the administration's actions. Broad constitutional challenges are first heard in the lower courts, either the administrative court or the district court. It does not belong in the administrative court. Let me ask you, are your challenges bound up in this, as the government refers to it, as the alleged regulation or whatever? Whatever it is. Is it all tied up? Is it all intricately intertwined and bound together? Our charges are centered, our claims are centered on the identification requirement. Now, there are no facts that are particular to John Gilmore that are so intertwined that make him so different. He's not relitigating any facts. There are no facts. So the issue of there being a problem with that in the district court proceedings doesn't exist in this circumstance, Your Honor. Tell me what the essence of your constitutional challenge is. Certainly. This is an administrative search, period. This is not a Terry search. This is not a request for a waiver of Fourth Amendment rights by the government a hundred million times a year saying, Can I look in the trunk? Asking for identification. Yes. It is an administrative search. Administrative searches automatically trigger Fourth Amendment challenges, and the standard is reasonableness. This Court in U.S. v. Davis set out the standards for reasonableness in airport searches. It is that it be limited to the search for weapons and explosives and be confined in good faith for that purpose. The identification requirement is not to find weapons. It is to find people. So it's unconstitutional to ask somebody in an airport setting for identification. It is unconstitutional to use an administrative search to go beyond the confines of the administrative search. Two other tenets, basic tenets of administrative searches are that they not be personal and that they not be used for law enforcement purposes. What's your best case for the proposition that asking someone for identification in public is a search covered by the Fourth Amendment? Heibel. Supreme Court just covered it last year. It involved identification and the Court applied Fourth Amendment analysis. In that case, they had suspicion. Here, there is no suspicion. In that case, they had a law, Nevada statute. Here, we have nothing to look at, Your Honor. Not only is our best case, not only do we make the stand on Fourth Amendment because on, you know, in Davis, the Court warned about the obvious danger that an administrative search would be subverted for law enforcement purposes. They gave an example in footnote 43 that the law enforcement would use flight manifests for law enforcement purposes. Now, that's what's going on here, Your Honor. The other strong argument we have is the third prong in Davis is that you must be able to not fly. You must have a choice, right? You must have some, you know, maybe you must be able to avoid the search by electing not to fly. That doesn't mean that if you do fly, you prong 1 and 2 does not apply. It still applies if you elect to fly. What it means is that the Court looks at what happens if you don't elect to fly, and the Court spent an entire section, section 4 in Davis, on the right to travel. They found that the right to travel is fundamental, and it fully went over all the language that we know about the right to travel. No, you don't have a right to travel by airplane. You have a – but if something impinges upon your right to travel, then the Court must take a look at it. Davis said that every, every aspect of an airport search must be given critical examination for its imposition upon the right to travel. The lower court took a look at this and said right to travel is only one form. Analysis doesn't apply. Davis, this Court, said you must examine every part of the airport search and the I.D. requirement is part of the airport search. We've stated the claim on Fourth Amendment grounds and right to travel. TSA's practice is that passengers must show I.D. to travel. Helen broadly challenged this. Disingenuously, TSA calls this a security directive, a law enforcement technique and order, whatever. Whatever they call it, we can't see it. And fundamentally, that affects appellants and everybody else's in this country ability to challenge this and also the Court's ability to review this. That's our due process challenge, Your Honor. So Fourth Amendment, right to travel, due process. Whatever this directive is or order or rule, we know that it requires the airlines apparently or somebody to ask for I.D. What it requires is for passengers to go into their pocket and pull out their I.D. and show it to somebody. That is a law. Either you do the law is that either you do something or you suffer the consequences. Here, this is a law of leave or that's suffering the consequences. You're giving up something. It's a punishment. Laws of general applicability in this country must be written down. If they're applied to people, they must be clear. This is America. We do not have secret laws, period, Your Honor. I can't stress that enough. What TSA is about to argue is that Congress told us to do it. It doesn't matter who told them to do it. What matters is does it comport with our laws. What do you do with the Delgado rule that seems to suggest that an officer doesn't implicate the Fourth Amendment simply by asking somebody for identification? Delgado is a Terry search. We are talking about an administrative search. What's the difference in constitutional terms? Administrative searches automatically trigger Fourth Amendment protections. The test is reasonableness. Davis sets out. It automatically triggers Fourth Amendment protections. If the Fourth Amendment is not implicated by asking somebody in public for identification as suggested by Delgado, that's the end of that. No, it's not, Your Honor. The differences between a Terry search and an administrative search are vast. In Terry, you need a seizure and a search, right? And here, in administrative court, in administrative searches, we don't go down that road. You don't need a seizure to trigger Fourth Amendment analysis in administrative searches. Terry does not apply, nor does the area of Fourth Amendment analysis where the cop asks, can I look in the trunk? They're not asking 100 million people a year, can I look in your wallet for your ID? This is an administrative search. Davis applies. It can't be used for ñ it can't be personal. I refer to page 1244 of U.S. v. $124,570. Part of the problem with your analysis is that Terry involves a seizure. And here, I don't see that there's any seizure. So it seems to me that without a seizure, simply asking somebody for identification doesn't implicate the Fourth Amendment at all. Again, Your Honor, this is not a Terry search. Is there a seizure when you ask somebody for identification? That may be, and we have made that argument, but it's not our strongest argument. It's your weakest argument. I would possibly agree with you. But our strongest argument is that this is an administrative search. No matter how you define the ID requirement, no matter how you qualify the ID requirement, you get in the line at the airport, and it says, passengers must show ID. You see, you tell me your best case is Heibel, but that's a case that says asking questions is an essential part of police investigation. In the ordinary course, a police officer is free to ask a person for identification without implicating the Fourth Amendment. Then they say, however, in a Terry circumstance, you're effectuating a seizure. And so therefore, if there's no seizure, it seems that the first part of this that plays off of Delgado and Crouse v. Delaware is right. There is no seizure. There is no Fourth Amendment implication simply asking somebody for identification. Terry did not – I mean, Heibel did not involve – and all the cases that Heibel refers to there in that case did not involve an administrative search. I can't stress this enough. You have to look at this case as an administrative search. You get in line at the airport. It says you must show ID. You get searched. It's an inquiry. It isn't a search. It's part of the administrative search, Your Honor. And it can't – it couldn't be clearer. I don't know what to say to you about that. Congress has told us – Congress is also going to say that this is SSI. We can't tell you about it. But this is a law. This is law of general applicability. SSI applies to security, things that must be kept secret, a general law of applicability. You must show ID to travel as part of an administrative search. It's not SSI. It is the law, and it must be public. They say that if we made the law public, we wouldn't be able to catch as many bad guys. That is a very dangerous road for this country to go down. I ask that this case be remanded back down to the district court for – I was going to talk to Southern California Aero Advertisers versus FAA, where the court found that there was not an adequate record for a substantive review of an order by the FAA. It's the same situation. You have nothing to review. This must be sent down somewhere. I ask that this case be remanded for the development of a record that appellant be able to inquire as to the reasons for the ID check and challenge its effectiveness. The court's 12B6 determinations be overruled. But if the court feels otherwise, grant leave to amend. Thank you. I'll be back. Thank you. May it please the court. My name is Joshua Waldman. I'm from the United States Department of Justice. You're representing the federal defendants in this case. To protect airline security and passenger safety, passengers are required to show their identification or submit to a search before they board an airline. In the United States versus Davis, this court upheld the screening procedure just like that against the Fourth Amendment challenge and against the right to travel challenge. Davis is right on point and forecloses the principal claims of the plaintiff in this case. His additional claims are that the same screening procedure  the right to assemble. But the plain fact is that nothing Has applied to him. Has applied to him. That's correct, Your Honor. But nothing in the screening procedure at all impinges upon a person to assemble. They can assemble wherever they want. They can petition wherever they want. They don't merely have to comply with the screening procedure. They can travel by other modes of transportation. They can assemble in any way that they want. At most, there is a very minimal incidental effect on your right to assemble, which does not implicate First Amendment rights at all under the case of Arcaro versus Cloud Books. And the final challenge on the merits is a vagueness claim, which fails as well, the first claim being that the plaintiff did not have any notice of the ID requirement. His own complaint at page 7 in the joint appendix says he received oral instructions, that he looked on TSA and FAA websites and saw a sign in the airport, all of which told him about the ID requirement. That's actual notice. Normally, we rely upon the legal fiction that things are in the United States Code. Here, we have actual notice. It's one better. And the last claim is that the ID requirement violates due process because it bests standardless discretion in government officials. It's the case here, as it was in Davis, that the screening requirement is applied to everyone uniformly and that, per Davis, the screening of the ID requirement and all aspects of the screening process are restricted to good faith effort to deter weapons or explosives. Those two aspects sufficiently confine the discretion of government officials and resolve that due process claim. How about the jurisdictional issue? Well, that's certainly the toughest question in the case, Your Honor. I think that the answer is that the plaintiff is required to file a petition directly in this court and not go to the district court. It's all governed by Section 4-6. But how do we know that? How did the district court know that at the time it ruled? Well, I think the first question you have to ask is whether or not there's a, quote, order within the meaning of 46-110. Okay, so point me to an order. Point me to the record which shows the order which vests jurisdiction in this court rather than the district court. Well, the first thing to be aware is you don't actually need to have an administrative record in order to have an order. You don't need administrative proceedings or a record. And this court has made that clear in Nevada Airlines and in San Diego Air Sports Center. There has to be a showing of an order. No, that there does not need to be. There needs to be an order, but there doesn't need to be an administrative record. Right. Now, the order itself, the one that's alleged here, that's the center of this case, is a security directive, and that's in plaintiff's complaint, and we accept that as true. Now, under this court's precedence, what counts as an order is essentially anything except rulemaking under notice and comment procedures under the APA. Everything else is essentially an order under 46-110. Now, we know that we're not involved with a rule pursuant to notice and comment rulemaking here because we're talking about a security directive, which is issued pursuant to Section 14-S, which is expressly referenced in 46-110. And security directives, as we all know in this case, are not published, obviously not pursuant to notice and comment rulemaking.  Therefore? Therefore, jurisdiction vested exclusively in this court pursuant to a petition for rebate. How do we know there's an order? Because you say there was? In other words, when the district court said, I don't have jurisdiction, it was looking at something or looking at nothing or listening to arguments of counsel? How did it get there? What it did is it looked at the complaint, which alleged the existence of a security directive. Then it took our motion to dismiss and said, the standard on a motion to dismiss in this case, as in any other case, not involving security directives, is to assume the truth of the allegations in the plaintiff's complaint. So he said, the district court judge said, I assume the existence of a security directive. I understand that to be in order within the meaning of 46-110. And therefore, I, the district court, do not have jurisdiction. It's exclusively. But the government didn't stipulate that there was an order. No, we did not stipulate. In fact, we couldn't confirm or deny the existence. Right. You just said, well, it's alleged in the complaint. And we'll accept their allegation, I guess, for purposes of this legal ruling. I think that's true. But it's certainly – you know, I'm not someone who's going to say that doesn't sound peculiar. But I will say – Doesn't it take you as a bit on? It does. But if you think about it, Your Honor, if we were not dealing with a security directive, an SSI in this case, we would say exactly the same thing, simply because that's the standard on a motion to dismiss. You assume the factual allegations to be true, and you don't dispute them or stipulate to them. Well, the Court – you know, you do know the rule. We could – we can't. It's proper for the Court to look at matter that's alleged in the complaint, documents referred to in the complaint, and items you can take judicial notice of. It's all proper, you know, material for consideration on a 12b6. I think – And, you know, the district court needs to assure itself, or we need to assure ourselves, that we have jurisdiction. So I don't see why it would not be – it seems kind of strange not to take a look at whatever it is that's out there, whatever it may be. Well, I think the district court felt that it was in the position to determine the jurisdictional issue without actually looking at the face of the order, saying all we need to know is that there is a court order within the meaning of 46110. Then it doesn't matter what it says or doesn't say because we're not going to be there. Let me ask you this. Would she have to look at that order, or whatever it is, I don't know whatever it is, whatever it might be, in order to determine whether his other – the other claims are related or separate or it's a broad constitutional challenge? Because the district court went on, even though the district court said I don't have jurisdiction over the due process claim, I can reach the merits of these other arguments because it's a broad constitutional challenge. But she did that without looking – without actually seeing what this order is. Is that okay? Well, I don't think that she had jurisdiction over any of the claims. That's our position because they're all intertwined with the order. But wouldn't you want to see whatever it is that's out there in order to make that determination, whether it's all bound up into one? Well, I think you just look at the face of the complaint. What he's saying is there's a security directive. And pursuant to that security directive, officers did a bunch of things, including asking me for my identification. And that inquiry, that request, violates a number of constitutional provisions. I think it's plain just simply from understanding that story in the complaint that they're all intimately bound up with a security directive and that you can't sort of separate out the claims and decide them piecemeal, some in the district court and some in the court of appeals. So the government's position is that the district court had no jurisdiction whatsoever. That's correct. That the proper course was to file a petition for review in this court. I love it. The government is clamoring to get before the national court. Well, there are a number of things to figure out. Careful what you wish for. Well, we assume you'll come to the right judgment, Your Honor. Let me ask you this. Yes. Can we just transfer the complaint here and deem it as a petition? Yes, I think that would be within your discretion to do that. And we suggest that in our brief. If you felt like it was the correct thing to do to address the merits, I think that would be within your discretion. So we do have some case law. I think it's called Mace, where we talk about broad constitutional challenges to a practice. That's right. Why doesn't this, the non-due process claim that directly goes to the, directly to this alleged regulation or whatever it is, directive, why doesn't principles in Mace sort of apply to this whole attack here? Well, Mace is a little bit of a tricky case. And you may have noticed we have a very long footnote in our brief addressing it. Let me see if I can sort of parse that out for you. It's not just Mace. There's Foster and Crist and some other cases that come after it. What Mace and Progeny do is establish a distinction between constitutional challenges that are made as applied versus on their face, and says that as applied constitutional challenges must go directly to the court of appeals, where facial challenges can go to the district court. And that was seen in 46-110. Now, the plaintiff's allegations in this case, the constitutional challenges, are all as applied challenges. And we know that for several reasons. First, if you look at his statement of issues, he speaks about as applied constitutional challenges. Second, if you look at his argument and his complaint, all of his constitutional challenges rely on facts particular to him. We don't agree that the outcome actually turns on that, but that's how he presents them to the court. For example, his right to travel claim hinges on, one of his arguments is, I can't travel by any means, airplane or otherwise, and I can't even get in my own car and drive because I have a medical condition that prohibits me from driving, which is something that's particular to him and not to your average plaintiff. He says, with respect to the Fourth Amendment claim, I have a particular fear that I'm going to be arrested and not just simply allowed to go along my merry way if I don't show my ID, based on a 1996 arrest of his. That, again, is something that's going to make his challenge an as-applied challenge rather than a facial challenge, and he makes similar allegations in his due process claim about the nature of precisely what he was told by various airline representatives made it vague to him. Again, we don't agree that the outcome on the merits would turn on those things, but they do make his challenge as-applied rather than facial, and, therefore, under Mace, they're not what Mace would call a broad constitutional challenge. They're what Mace and Progeny would call an as-applied challenge and, therefore, must be filed directly by a petition for review in this Court. It's a little bit convoluted. I admit that. The statute itself is a little bit, is not the most artfully drawn thing, and the cases are a little bit confusing, but that's the way it works out ultimately. Under this Court's precedence. What was the government's purpose to the district court of playing cat and mouse with what this was? It was referred to variously as a policy, and you refused to take, government refused to take any position. What was that for? Honestly, I don't know what Your Honor is referring to. The district court says the government won't really concede anything about whatever this is or isn't. Policy. I don't remember if it was a dispute over the labels or it's just existence or it's content, but certainly the attorney who represented the government in the trial court, like I am, were bound by regulations that relate to SSI. And what it says is that either I or the district court attorney can disclose this information without a need to know. And it was the position in the district court. Federal defendants refused to concede whether a written order or directive exists or if it does, who issued it or what it says. Did you say that's because somebody was afraid of being charged with a classified information felony or something? Well, it's not classified information. But, I mean, if you're an attorney, a government attorney in the district court, and you are bound by this regulation that says you can't disclose its contents, its existence, et cetera, then, you know, you're bound by that. And furthermore, if you're before the district court and the district court says, well, I think I can decide this case assuming the truth of the complaint without your saying what's in it, then there's no reason to go ahead and do so. Now there's an attempt to file something under seal. Well, we've offered it and we stand ready, you know, we're continuing to offer it if the court feels that there's a need to know in order to resolve this case. We stand ready to file it in camera, ex parte. It's a brouhaha about whether it can be filed under seal. That's right. I mean, I personally don't understand it. I mean, it would give the court, if the court felt it was necessary, an opportunity to actually review the thing that we're talking about. Everyone's been saying there's sort of this peculiar Orwellian feel about it. Now we've offered to show it to a panel of three impartial judges, and somehow that's seen as improper. You heard earlier, we don't know what we're doing. We wouldn't know what to ask. We wouldn't know what to do with it. I assume you can read, so, you know, there it would be. I mean, you know, again, I don't think it's necessary for you to see it in order to decide the case. You could decide it purely on jurisdictional grounds. You could take the court that the district court did, assume the facts to be true and decide the facts. What is the government recommending we do with this? I think that you should either dismiss the case on jurisdictional grounds on the whole, or reach the merits, treating it as a transfer, and then affirm on the merits under Davis and all the arguments on the merits in the brief. And we give arguments in our brief on how you can decide the case without looking at the sealed material. And, you know, since that's not really necessary, it's a lot of sort of extra procedure, I don't think that you need to do that, but we stand ready to provide it if you come to a contrary conclusion. Did you want to address any of the merits, the search and seizure? Sure. The search and seizure, I think that's all, you know, under Davis. The argument's squarely foreclosed. The question is, did Davis set forth the absolute constitutional maximum of what you could do in a security procedure? I don't think so. I don't think that the incremental addition of an I.D. requirement changes the constitutional outcome. It's not just here. I mean, this Court asks for I.D. when you come into the courthouse. It says so on your notice for the oral argument, I.D. required. You know, I don't think that that changes the outcome here. The same thing with the right to travel. Arguably, it's not an imposition at all. It promotes the right to travel by protecting everyone's safety, and Davis itself makes that point. In terms of the First Amendment, they're not really even implicated. These are, at most, incidental burdens on the right to assemble or the right to petition. I'm really not aware of any right to travel anonymously recognized by any case anywhere. All those cases deal with core First Amendment speech activities. I don't know. If you read Griswold, there's a right of privacy that might attach. Well, I mean, I don't know that the anonymity aspect to it would come out of Griswold. That's certainly not the argument here. And we don't deny that there are some rights that an aspect of which is anonymity. I mean, that's clear in Watchtower Bible and McIntyre. Our point is that those deal with core First Amendment speech, such as leafleting, where the court said, you know, since time immemorial, people have been doing, since the Federalist Papers, people have been doing these things anonymously. But that's not the same thing as being able to get onto an airplane without showing your photo ID, which, by the way, according to the complaint, he didn't have to either. He could have just submitted to what he called the heightened search, which was alleged in his complaint, and not shown his ID. So, I mean, I think that squarely forecloses his claims. And if there are any further questions, I'd be happy to address them. If a plaintiff were to show that his or her particular situation were such that aircraft travel was the only way that that person could travel, would that at all force a court to address the choice question? In other words, if you can turn to spin on your tracks and go back, but if you're going to travel at all, if that person's going to travel at all, it has to be by plane. Does that change the analysis at all? Well, it certainly doesn't change the Fourth Amendment analysis. And it doesn't, I think, arguably, it would have some impact on the right to travel analysis. And here, of course, we don't have that claim. And I think it's sufficient to say only one mode of travel was foreclosed, and that's it. And that's only outstanding the challenge. But the ultimate question for the right to travel is whether the burden placed upon it is a reasonable one or an unreasonable one. And in the government's view, the small, minimal requirement of showing your identification when it's done for such compelling public safety interests, and it affords you the right to turn around and leave, that that minimal imposition doesn't unconstitutionally interfere with the right to travel, even if the airline is the only way that you can travel. I have difficulty understanding why someone couldn't get into a car or hire a chauffeur or something to do travel. But if that were the situation, I think the outcome would be the same. Are there any further questions, Your Honor? I ask you to affirm the district court. Thank you. Thank you. I think we have some rebuttal time. Yes, this Court should extend jurisdiction over this. And, yes, it should send it down to the district court for an evaluation of the broad constitutional challenges in the establishment of a record. If we keep it, do you wish to amend? I would like the opportunity to amend. If the issue of jurisdiction. In what respect? One of the issues that has been large in this case is just what forms of travel the appellant is challenging. He is challenging all forms of travel in the United States that require identification as a prerequisite for their use. Amtrak presently requires I.D. to travel by train. It doesn't give an option of a heightened level of search. It's I.D. or nothing. The Coast Guard, on their website in Mark 1 standard, says all passenger vessels must get I.D. from their passengers before they can board. We would like to flesh in the other forms of travel that required identification. If there are standing issues, we would like to correct them. This, you know, Davis is not limiting on the – on what they can do. I mean – I'm sorry. I got that backwards. Davis is extremely limiting on what they can do in the administrative airport searches. It must be confined in good faith for a search of weapons and explosives. Only that, if you take a look at all the cases after Davis about administrative searches, it's just that. A great case to look at is U.S. v. $124,570. It's right on point. They talk to – What case says that simply asking somebody for identification in a public setting is a search? This is not a public setting, Your Honor. This is an administrative search procedure. Thank you for answering my question. Yes. It might be public that you're doing it with other people. It might be public that you can be viewed, but it's not walking on the street. I assume what you're telling me is there are no cases. This is unique in America. We are facing uncharted territory, and we rely on the judiciary to lead us through this, Your Honor. The facts of Gilmour's case do not limit his challenge here. There's no facts in his case that are different from anybody else with regards to the broad constitutional challenges that he's bringing. Everybody must be – everybody must show ID, although they're saying everybody must not show ID. I frankly don't understand what the rule is, Your Honor, and I think that 99 percent of America would be just floored if they knew that you could fly on an airplane without having to show ID. It's just not out there. I tried to fly without ID. I got arrested. I wasn't asked for a search. I was – I had got searched and had to show ID. Your point is America would be shocked to know we're not asking for ID? America would be shocked to know that one branch of this administration is putting signs up in airports that say passengers must show ID. Next time you go to the airport, look, it says it right there. It's a TSA sign. Government attorneys are coming in here and saying to this court, no, passengers don't have to show ID. They are in opposite. I think that this country would be shocked to know that, yes. So they would be shocked if the sign were to say passengers must show ID or leave, right? That would be shocking? No, that's not what's shocking, Your Honor. What's shocking is that the judiciary is getting one story and the American people are getting another. Regarding anonymity, administrative searches cannot be based on personal – it cannot be personal. It's suspicionless, and for that reason, it's not personal. The ID requirement makes it personal. All of a sudden, we're not looking at somebody for what they have with them. We're looking at who you are, and that's just opposite to administrative search law, all of it, going back to the very beginning of administrative searches. Regarding aircraft and the only way to travel, look at 124,000 case, look at Davis. It is a unique and irreplaceable form of travel. It covers great distances in no time. It crosses borders, both, you know, countries, oceans. It's not replaceable. It's not something that's replaceable, and for that reason, it receives special stuff. One of the reasons that the court puts out on page 79 in our brief is that what they're doing with the ID test is conducting a behavioral test on people to see if they're willing to show ID or not. What are they doing here? They're conducting behavioral tests within the lines of TSA. That's not their job. Their job is to search for weapons and explosives. It is the very ubiquitousness of the airport security checks that calls for our greatest vigilance. On our part, liberty, the freedom from unwanted intrusions by government, is as easily lost by the insistent nibbles. You know the story. You know the quote. We're losing it to the insistent nibbles of the government. Time's up. Thank you. Thank you, Your Honor.
judges: Trott, T.G. Nelson, Paez